IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DALE METZGER,  )
        Petitioner,  )
  )
        v.  )        Civil Action No. 16-764
  )
  )
LAWRENCE MAHALLY, Superintendent  )
SCI DALLAS, et al.,  )        Magistrate Judge Mitchell
        Respondents.  )

## MEMORANDUM OPINION AND ORDER

Petitioner, Dale Metzger, brings this habeas corpus action pursuant to 28 U.S.C. § 2254, challenging his convictions on charges of burglary, rape by forcible compulsion, sexual assault, unlawful restraint, terroristic threats, simple assault and theft by unlawful taking and the sentence of fourteen to twenty-eight years of imprisonment, imposed by the Court of Common Pleas of Allegheny County, Pennsylvania on May 23, 2011 at Criminal Action No. CP-02-CR-2367-2008. The charges stemmed from the January 18, 2008 attack on victim Ashley Feather. For the reasons that follow, the petition will be denied.

Procedural History

On January 19, 2011, Petitioner proceeded to a non-jury trial before the Honorable John A. Zottola. Petitioner was represented by Patrick Thomassey, Esquire and the Commonwealth by Assistant District Attorney Matthew Robinowitz. The trial continued on February 14, 2011. At the conclusion of the non-jury trial on February 22, 2011, Petitioner was found guilty on all counts. Sentencing was deferred pending the preparation of a presentence report.

Petitioner was sentenced on May 23, 2011. At count 2-Rape, Petitioner received a sentence of ten (10) to twenty (20) years of incarceration. At count 1-Burglary, Petitioner received a sentence of 48 to 96 months of incarceration to run consecutive to the sentence

imposed at count two. In total, Petitioner received a sentence of fourteen (14) to twenty-eight (28) years of incarceration.

On June 6, 2011 Judge Zottola appointed Alan Patterson, Esquire to represent petitioner on Appeal. On June 24, 2011, Petitioner, through Attorney Patterson, filed a Post-Sentence Motion and on November 9, 2011, he filed a Supplemental Post-Sentence Motion. (Answer Exs. 2, 3.) Judge Zottola deemed Petitioner's Post-Sentence Motions timely and denied them, on their merits, on November 9, 2011. (Answer Ex. 4.)

On December 6, 2011, Petitioner, through Attorney Patterson, filed a Notice of Appeal, which was docketed at No. 1911 WDA 2011. (Answer Ex. 5.) On January 3, 2012, Petitioner, through Attorney Patterson, filed a Concise Statement of Errors Complained of on Appeal, in which he raised the following claims:

> a. The Trial Court erred or abused its discretion when it denied Defendant's Motion for Judgment of Acquittal where the evidence presented by the Commonwealth was insufficient to prove beyond a reasonable doubt that the Defendant was the individual who committed the acts for which he was convicted.
> b. The Trial Court erred or abused its discretion when it denied the Defendant's Motion for Judgment of Acquittal where the evidence presented by the Commonwealth was insufficient to prove beyond a reasonable doubt the crime of Burglary and that, if in fact the Defendant entered the residence, the Defendant intended, at the time of entering, to commit any crime therein.
> c. The Trial Court erred when it denied Defendant's Motion Challenging the Weight of the Evidence pursuant to Pa.R.Crim.P. 607 where the verdict was so contrary to the evidence presented by the Commonwealth, that the Defendant was the individual who committed the acts for which he was convicted, as to shock one's sense of justice.
> d. The Trial Court erred when it admitted the 911 tape where the tape would otherwise not be admissible as an excited utterance and/or where the prejudicial nature of the tape outweighed the probative value, if any.
> e. The Trial Court erred or abused its discretion when denying Defendant's motion to modify or reduce sentence and failed to adequately consider the sentencing code set forth at 42 Pa.C.S.A. §9721, *et seq.*, in fashioning a harsh sentence of consecutive periods of incarceration at Counts 2 and 1 totaling fourteen (14) to twenty-eight (28) years.

(Answer Ex. 7 ¶ 6, APP 52-53.)

On April 12, 2012, Judge Zottola filed his Opinion. (Answer Ex. 8.) In his Appellant brief filed on July 13, 2012, Petitioner raised the following issues:

> I. Did the Trial Court err or abuse its discretion when it denied Appellant's Motion for Judgment of Acquittal where the evidence presented by the Commonwealth was insufficient to prove beyond a reasonable doubt that the Appellant was the individual who committed the acts for which he was convicted?
> II. Did the Trial Court err or abuse its discretion when it denied the Appellant's Motion for Judgment of Acquittal where the evidence presented by the Commonwealth was insufficient to prove beyond a reasonable doubt the crime of Burglary and that, if in fact the Appellant entered the residence, the Appellant intended, at the time of the entering, to commit any crime therein?
> III. Did the Trial Court err when it denied Appellant's Motion Challenging the Weight of the Evidence pursuant to Pa.R.Crim.P. 607 where the verdict was so contrary to the evidence presented by the Commonwealth, that the Appellant was the individual who committed the acts for which he was convicted, as to shock one's sense of justice?
> IV. Did the Trial Court err when it admitted the 911 tape where the tape would otherwise not be admissible as an excited utterance and/or where the prejudicial nature of the tape outweighed the probative value, if any?
> V. Did the Trial Court err or abuse its discretion when denying Appellant's Motion to modify or reduce sentence and failed to adequately consider the sentencing code set forth at 42 Pa.C.S.A. § 9721, *et seq.*, in fashioning a harsh sentence of consecutive periods of incarceration at Counts 2 and 1 totaling fourteen (14) to twenty-eight (28) years?

(Answer Ex. 9 at 7.)

On November 15, 2012, the Superior Court issued a memorandum affirming the trial court. (Answer Ex. 12.) On May 8, 2013, Petitioner, through Attorney Patterson, filed a Petition for Allowance of Appeal Nunc Pro Tunc. (Answer Ex. 13.) On July 9, 2013, Petitioner's Petition for Leave to File Petition for Allowance of Appeal Nunc Pro Tunc was granted. (Answer Ex. 15.) On August 7, 2013 Petitioner, through Attorney Patterson, filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court, docketed at No. 371 WAL 2013. He raised the following issues:

> I. The Superior Court erred or abused its discretion when it ruled that petitioner

> waived his sufficiency of the evidence claim stating that it had been improperly raised in the 1925(b) statement filed with the lower court. Wherein the evidence presented by the Commonwealth at trial was insufficient to prove that petitioner was the actor who committed any and all of the charged offenses.
> II. Did the Superior Court err or abuse its discretion when it denied the Petitioner's Motion for Judgment of Acquittal where the evidence presented by the Commonwealth was insufficient to prove beyond a reasonable doubt the crime of Burglary and that, if in fact the Petitioner entered the residence, the Petitioner intended, at the time of the entering, to commit any crime therein?
> III. Did the Superior Court err when it admitted the 911 tape where the tape would otherwise not be admissible as an excited utterance and/or where the prejudicial nature of the tape outweighed the probative value, if any?
> IV. Did the Superior Court err or abuse its discretion when denying Petitioner's motion to modify or reduce sentence and failed to adequately consider the sentencing code set forth at 42 Pa. C.S.A. § 9721, *et seq.*, in fashioning a harsh sentence of consecutive periods of incarceration at Counts 2 and 1 totaling fourteen (14) to twenty-eight (28) years?

(Answer Ex. 16 at 5.)

On November 27, 2013, the Pennsylvania Supreme Court denied Petitioner's petition for allowance of appeal. (Answer Ex. 17.)

On July 15, 2014, Petitioner filed a pro se petition for Post-Conviction Collateral Relief (PCRA). (Answer Ex. 18.) On July 17, 2014, Judge Zottola appointed Charles Pass, Esquire, to represent him. On July 25, 2014, Attorney Pass filed a No-Merit letter and a Motion for Leave to Withdraw. (Answer Ex. 19.) On August 25, 2014 Judge Zottola Granted Attorney Pass's Motion to Withdraw and issued a Notice of Intent to Dismiss Petitioner's PCRA. (Answer Ex. 20.) On September 9, 2014 Petitioner filed an Objection to the Court's Intent to Dismiss. (Answer Ex. 21.) On September 22, 2014, Judge Zottola dismissed Petitioner's PCRA. (Answer Ex. 22.)

On October 22, 2014, Petitioner filed a Notice of Appeal to the Superior Court, which was docketed at No. 1822 WDA 2014. (Answer Ex. 23.) On December 8, 2014, Petitioner filed a Concise Statement, in which he raised the following issues:

>I. PCRA Counsel failed to investigate, at all, Trial Counsels' strategic/tactical
>decisions and the reasonableness thereof, resulting in ineffective assistance and a
>failure to create any substantive PCRA Record to support any viable Appeal.
>II. The PCRA Court's allowance of PCRA Counsel's withdrawal and summary
>denial of PCRA Relief was an abuse of discretion in not applying a more stringent
>review of Counsel's Turner/Finley Motion, and without any Judicial Opinion
>separate from said Motion allowed all aspects of PCRA Due Process Guarantees
>to be denied access by Defendant.

(Answer Ex. 25 at 1, 2.)

On January 6, 2015, Petitioner filed an "Allonge to Petition for Post-Conviction Relief" (Answer Ex. 26) and his second pro se PCRA (Answer Ex. 27). In this second PCRA, Petitioner raised the following issues:

>1. The said conviction resulted from ineffective assistance of attorney/fiduciary
>which, in the circumstances of the particular case, so undermined the truth-
>determining process that no reliable adjudication of guilt or innocence could have
>taken place.
>2. Attorneys/Fiduciaries Borrero, Thomassey, and Pass were
>ineffective/incompetent in allowing Dale Edward Metzger, the living, breathing,
>flesh-and-blood man, sui juris, sui generis, to be substituted as the "cash
>equivalent" "COLLATERAL", due to a summarily issued default judgment for
>failure to pay "cash", in lieu of the fiction actually proceeded against.
>Said Attorneys/Fiduciaries were also ineffective/incompetent in allowing the
>above-stated Fraud to occur; for failing to protect against same; and, provide
>advice on how to discharge the "failure to pay" proceedings.
>This Court retains jurisdiction of the said Principal/Corpus as Settlor of the Trust,
>and if necessary, may appoint a fiduciary (without attaching any obligation
>whatsoever upon Dale Edward Metzger) to arrange compromise/settlement,
>which, dissolves all attachments, liens, indentures, encumbrances, and the like,
>and release Dale Edward Metzger from confinement as collateral. (Such a
>compromise and settlement may employ any fiction [ens legis, corporate entity, or
>person], attaching no obligation whatsoever upon the flesh-and-blood man. Same
>could also involve a "re-sentencing" to 3.5-7 years, which, validates the
>"proceedings" thus far executed). The Court may make a beneficial decision as
>herein offered without a hearing.

(Answer Ex. 27, AP 388, 391-92.)

On January 13, 2015, Judge Zottola denied Petitioner's second PCRA. (Answer Ex. 28.)

On January 22, 2015, Judge Zottola issued his Opinion regarding the dismissal of Petitioner's

first PCRA. (Answer Ex. 29.)

On February 10, 2015, Petitioner filed a Notice of Appeal as to Judge Zottola's denial of his second PCRA, which was docketed at No. 294 WDA 2015. (Answer Ex. 30.) On March 13, 2015, Petitioner filed his Brief for Appellant in the first appeal, at No. 1822 WDA 2014, in which he raised the following claims:

> 1. Did PCRA counsel's failure to investigate trial counsels' strategic/tactical decisions and the reasonableness thereof result in effective assistance of PCRA counsel and a failure to create any substantive PCRA record to support any viable appeal?
> 2. In failing to apply a more stringent review of PCRA counsel's Turner/Finley letter and without any actual opinion, was there an abuse of discretion violating due process when the PCRA court allowed PCRA counsel to withdraw while subsequently dismissing [Appellant's] timely filed first PCRA petition?

(Answer Ex. 32 at 5.)

On March 31, 2015, Petitioner filed his Concise Statement regarding the dismissal of his second PCRA, docketed at No. 294 WDA 2015. In his Concise Statement Petitioner raised the following issues:

> 1. [Petitioner] was without notice of the true monetary nature of the charges, his fiduciary agent (Trial Attorney) having advised a waiver of such notice under Pa.R.Crim.P. Number 571 without informing [Petitioner] of such true nature.
> 2. A breach of attorney fiduciary duty having allowed acceptance of the position as collateral for the debt represented by the above-captioned case, [Petitioner] is owed the opportunity to exercise his right to setoff, discharge, and exoneration through any Trust resulting from his existence or the existence of this case.

(Answer Ex. 33 at 1.)

On July 30, 2015, the Pennsylvania Superior Court issued an Opinion Affirming the dismissal of Petitioner's first PCRA by the PCRA court. (Answer Ex. 35.)

On August 28, 2015, Petitioner filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was docketed at No. 457 WAL 2015. Petitioner raised the following claims:

> I. Does affirmance of dismissal of the claim, that PCRA counsel was ineffective in failing to investigate the reasonableness of trial counsels' tactics and to create a substantive PCRA record to support a viable appeal, result in a denial of statutory and rule-based PCRA rights requiring the court's intervention?
>
> II. Does the different-grounds affirmance of dismissed claim, that the summary grant of PCRA counsel's Turner/Finley withdrawal resulted in abuse of discretion violating the Due Process embodied within a timely first PCRA petition, create an unresolvable dichotomy between the PCRA and Superior Courts' dismissal and affirmance requiring this Court's intervention?

(Answer Ex. 39 at 3.)

On March 15, 2016, the petition for allowance of appeal was denied. (Answer Ex. 41.) On June 8, 2016, Judge Zottola filed an Opinion in response to Petitioner's Concise Statement relating to the dismissal of Petitioner's second PCRA petition. (Answer Ex. 42.)

On June 9, 2016, Petitioner initiated this case by filing a motion for leave to proceed in forma pauperis. The motion was granted and the petition was filed on June 13, 2016 (ECF No. 3). On July 5, 2016, Respondents filed a motion to stay (ECF No. 9), citing Petitioner's pending appeal at the Superior Court on his second PCRA. However, on August 26, 2016, the Superior Court dismissed the appeal of the second PCRA petition for Petitioner's failure to file a brief. (Answer Ex. 43.) Therefore, on November 1, 2016, the Court denied the motion to stay (ECF No. 15).

<u>Petitioner's Claims</u>

In the petition, Petitioner raises the following claims:

> 1. Petitioner's Sixth Amendment guarantee of Assistance of Counsel for his defen[s]e was denied by Trial Counsel's failure to investigate and employ available cell-phone evidence that could establish innocence or, at least, reasonable doubt
> Original Trial Counsel (Anthony Borrero, Esq., P.D.'s Office) had obtained cell-tower maps from T-Mobile (Petitioner's cell-phone provider) and whereabouts of an expert to read said maps, which, when read in conjunction with Petitioner's phone-records could place him at a location other than the crime-scene at the time of the crime's occurrence. Replacement Trial Counsel (Patrick Thomassey, Esq.) while take 3-years to get Petitioner to trial and opting for a "from the hip"

7

> defense, allowed the said maps to remain in the Court's chambers without investigating or employing said maps or expert, and even failed to investigate and employ Petitioner's phone-records, which even without an expert, could prove to a reasonable judge that Petitioner was elsewhere at the time of the crime.
> 2. Petitioner's Sixth Amendment guarantee of Assistance of Counsel for his defen[s]e was denied by Trial Counsel's failure to impeach the victim with her prior mental health history and her attempt to purchase a gun after the miscarriage of her and Petitioner's baby and only weeks before the claimed assault. Pennsylvania law allows the disclosure of psychiatric record[s] in relation to an unlawful attempt to purchase a gun.
> The victim was known to be under prescribe medication for mental disturbance and that she was off such medication at the time of her miscarriage (Dec. 5, 2007), of her and Petitioner's child, of which, she was known to blame Petitioner and on same said day attempted to purchase a gun.
> The victim's attack occurred on January 18, 2008, i.e., 44-days after her miscarriage and attempted gun-purchase.
> 3. Petitioner's Sixth Amendment guarantee of Assistance of Counsel for his defen[s]e was denied by Trial Counsel's implication of Petitioner via an inculpatory phone-call from someone else's phone and misrepresenting that tape bound the victim's wrists, when, in fact, phone-cord bound her wrists, while tape covered her eyes.
> A phone message to the victim stating "Hi, Darlin, looks like you're not answering your phone like we talked about. I guess I will be in touch.", having been proven to originate from other than Petitioner's phone, was specifically attributed to Petitioner by Trial Counsel;
> The victim testified that tape covered her[] eyes and phone-cord [bound] her wrist[s] and the other end of the phone-cord was tied to the cellar stair hand railing.
> Trial Counsel attributes the tape as evidence the victim's hands were bound, when, in fact, it was already established that tape bound her eyes, and phone-cord her wrists.

(Pet. ¶ 12.) On November 15, 2016, Respondents filed an Answer to the petition (ECF No. 16).

Respondents concede that the petition is timely. (Answer at 15-16.) They also agree that the claims have been exhausted and are not procedurally defaulted. (Answer at 21, 26, 31.) However, they argue that his claims are meritless.

<u>Exhaustion</u>

The first issue that must be addressed by a federal district court when considering a habeas corpus petition filed by a state prisoner is whether the prisoner has exhausted available

8

state court remedies as required by 28 U.S.C. §§ 2254(b) and (c). The Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA), provides that:

> (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

28 U.S.C. § 2254(b).

It is well settled that, as a matter of comity, the state should be provided with the first opportunity to consider the claims of constitutional violations and to correct any errors committed in its courts. Rose v. Lundy, 455 U.S. 509, 518 (1981); Preiser v. Rodriguez, 411 U.S. 475 (1973). Accordingly, before a state prisoner's claims may be addressed by a federal habeas court, the constitutional issues must first have "been fairly presented to the state courts" for review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). Both the factual and legal basis for the claim must have been presented to the state courts. Thus, the Supreme Court held that "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." Duncan v.

Henry, 513 U.S. 364, 366 (1995).

The Court of Appeals has stated that:

> To "fairly present" a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted. See Anderson v. Harless, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); Picard v. Connor, 404 U.S. 270, 277-78, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). It is not sufficient that a "somewhat similar state-law claim was made." Harless, 459 U.S. at 6, 103 S.Ct. 276. Yet, the petitioner need not have cited "book and verse" of the federal constitution. Picard, 404 U.S. at 277, 92 S.Ct. 509.

McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999). The court has further identified four ways in which a petitioner can "fairly present" a claim:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Evans v. Court of Common Pleas, Delaware Cty., Pa., 959 F.2d 1227, 1232 (3d Cir. 1992) (citing Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 194 (2d Cir. 1982) (en banc)).

As Respondents have indicated, Petitioner raised all of his claims in his PCRA petition. Thus, they are exhausted and the Court turns to the merits of the claims.

Factual History of the Case

Quoting from the trial court opinion, the Superior Court summarized the facts of the case as follows:

> On the morning of January 18, 2008, [Victim] was awoken by noise by her bedroom door at approximately 7:45 [a.m. Victim] lives… with her mother and brother. [Victim] knew the house to be empty when she heard the noise because her mother and brother had already left for work. When [Victim] attempted to exit her room, a disguised subject who had covered his face and hands with a hood and gloves attacked her. This assailant physically forced her back on the bed and instructed her to be quiet. He used a "high-pitched voice with a southern accent" that [Victim] immediately recognized as a voice used by her ex-boyfriend, Appellant. [Victim] and Appellant dated from approximately August of 2006 to

10

November of 2007 and suffered a miscarriage on December 5, 2007.

Once [Appellant] had [Victim] on the bed, he duct taped her eyes and mouth shut and hands together. He proceeded to rub his hands on her chest, telling her that he was going to "tell [her] to do stuff that [she] didn't want to do, but [she] was going to do it unless [she] wanted to get hurt, and he told [her] that [she] needed to try and enjoy [herself]." Appellant freed her hands and removed her clothes, and instructed her to "play with herself." When [Victim] covered herself, Appellant reminded her that she had to do what he told her or she would be hurt. At this point, [Victim] gained a small amount of visibility from underneath the duct tape that was over eyes and nose. She also heard a "click" which sounded like a [disposable] camera, so she covered herself. Appellant climbed on top of her, grabbed her neck and wrists, and squeezed, telling her to "shut the F up … and do what he said and don't touch him." Appellant th[en] inserted his penis into her vagina and remained inside of her until he ejaculated. [Victim] consented to none of this sexual activity.

After ejaculating, Appellant questioned [Victim] extensively about her ex-boyfriend, if she knew where he was and why she broke up with him. Appellant brought up topics that only Appellant could have known. Appellant told [Victim] that his name was "Junior" and that he was a friend of her current boyfriend. He said that she "had given him the cold shoulder, but [she] was just too pretty to pass up." After this conversation, Appellant instructed [Victim] to get into the shower and "rinse herself out." He gave her a "squirt bottle" and told her to place it inside of her vagina and squeeze to rinse out the semen. [Victim] took the squirt bottle and used it, but did not place it inside of her vagina because she wanted to preserve the DNA evidence from the sexual assault. Appellant also wanted her to use her fingers to "get the evidence out."

After they left the bathroom and came back to her room, Appellant went through [Victim's] purse and wallet and took money ($24[.00]) and a $50[.00] gift card to Applebee's. He also took her down to her mother's room and took medication in pill bottles that [Victim's] mother used for her cancer. Appellant then took [Victim] to the kitchen where he tied her up with a phone cord and told [Victim] not to call the police when he left. To make sure she would not, he disassembled her cell phone and said he was going to call her to make sure she complied. He asked her for her phone number and she gave him a false number. At this point, Appellant went down the basement and exited through a door that only someone who had been in the house [previously] could have known about. [Victim] then freed herself with a kitchen knife, ran to the living room, grabbed the house phone[,] and dialed 911. As she looked out the living room window, she could see Appellant "walking up the hill with his hood up."

Though she never saw his face, [Victim] was able to identify a small tattoo on Appellant's hand, at the base of his thumb once he had removed the gloves. They had gotten matching tattoos while they were dating of the "infinity sign." Further, at 9:54 [a.m.], right after the assault, Appellant left a voicemail, from his number, on [Victim's] phone that said "Hi, Darlin, looks like you're not answering your phone like we talked about. I guess I will be in touch." He used the same high-pitched voice with a southern accent as her assailant had during the

assault. Lastly, experts from the Allegheny County Medical Examiner's Office were able to find DNA evidence from the Rape Kit confirming that [Victim] did have intercourse with Appellant within 24 hours of the reported assault. [Victim] states that prior to her assault on January 18, she had not had sex with [Appellant] since November of 2007.

      Officer Keith Stover of the City of Pittsburgh arrested [Appellant] on January 24, 2008. Officer Stover was serving an open arrest warrant on [Appellant] for the above incident and was directed to an apartment on Laclede Street. The officer and two other officers entered the apartment and when they searched it, they found a pile of clothes in a bedroom at the end of the hall with a big hump on it. Officer Stover reached in and pulled out [Appellant].

(Answer Ex. 12 at 3-5.)

Standard of Review

A petitioner is only entitled to federal habeas relief if he meets the requirements of 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Section 2254(d) "firmly establishes the state court decision as the starting point in habeas review." Hartey v. Vaughn, 186 F.3d 367, 371 (3d Cir. 1999). This provision governs not only pure issues of law, but mixed questions of law and fact such as whether counsel rendered ineffective assistance. Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000).

The Supreme Court has held that, "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of

materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). The Court has also held that:

> the "unreasonable application" prong of § 2254(d)(1) permits a federal habeas court to "grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts" of petitioner's case. In other words, a federal court may grant relief when a state court has misapplied a "governing legal principle" to "a set of facts different from those of the case in which the principle was announced." In order for a federal court to find a state court's application of our precedent "unreasonable," the state court's decision must have been more than incorrect or erroneous. The state court's application must have been "objectively unreasonable."

Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Lockyer v. Andrade, 538 U.S. 63, 76 (2003) (other citations omitted)). In other words, "the question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citations omitted).

Section 2254(e) provides that:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

All of Petitioner's claims involve the ineffectiveness of trial counsel. The United States Supreme Court:

> established the legal principles that govern claims of ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. Id., at 687, 104 S.Ct. 2052. To establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." Id., at 688, 104 S.Ct. 2052. We have declined to articulate specific guidelines for appropriate attorney conduct and instead have emphasized that "[t]he proper measure of attorney performance

13

remains simply reasonableness under prevailing professional norms." Ibid. Wiggins, 539 U.S. at 521.

To satisfy the second prong of counsel ineffectiveness, "a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 534 (quoting Strickland, 466 U.S. at 694.) In addition, although a petitioner must satisfy both prongs to succeed on his ineffectiveness claim, the Court noted that " [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

The Court of Appeals has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to Strickland. Werts, 228 F.3d at 204. Thus, the relevant question is whether the decisions of the Pennsylvania courts involve an unreasonable application of Strickland. Jacobs v. Horn, 395 F.3d 92, 106 n.9 (3d Cir. 2005). See also Taylor v. Horn, 504 F.3d 416, 430 (3d Cir. 2007). That is, a petitioner must show that the state courts "applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002).

The question is not whether the defense was free from errors of judgment, but whether defense counsel exercised the customary skill and knowledge that normally prevailed at the time and place. Strickland, 466 U.S. at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead ha[s] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 688).

14

Claim One: Failure to Investigate and Present Cell Site Location

In his first claim, Petitioner alleges that trial counsel was ineffective for failing to investigate and present expert testimony about available cell site locations. Petitioner's argument is that counsel could have established the whereabouts of his cell phone and thereby established an alibi for him at the time of the assault.

The Superior Court, on appeal of the denial of his PCRA petition, addressed this claim as follows:

> We agree with the PCRA court that failure to present evidence relating to the location of Appellant's cell phone did not cause actual prejudice. The evidence presented at trial was overwhelming that Appellant was at the crime scene and committed the attack. As noted, above, Appellant's DNA was recovered from Victim's vagina. Furthermore, Victim was able to identify a tattoo of an infinity sign on Appellant's thumb. Victim was also able to identify Appellant's voice and was certain that the attacker had previously been in her home because he knew of the basement door. Finally, comments made by the attacker during the course of the rape included facts known only by Appellant. This evidence overcame any probative value relating to the location of Appellant's cell phone during the attack as Appellant could have left his cell phone in another location while assaulting Victim.

(Answer Ex. 35 at 7.) The court further noted that he failed to show that an expert was willing and able to appear at trial. (Id. at 7-8.)

The PCRA court, citing the no-merit letter filed by PCRA counsel, held that "the alibi evidence was so tenuous and unsubstantial that it was reasonable to trial counsel to forego asserting such a defense." (Answer Ex. 29 at 4.) Respondents observe that trial testimony established that: the attack occurred between 7:45 a.m. and 9:00 a.m.; Petitioner claimed to have been asleep and then on his way to the Allegheny County Courthouse (although he never arrived there) during this time; but the courthouse was a mere 2.5 miles from the victim's house; and thus he could have left her house at 9:00 a.m. and still had time to call her from a location near

15

the courthouse by 9:13 a.m. (TTI 35-36; TTII 31-32; Answer Ex. 19 at 15-16.)[1]

Petitioner has not demonstrated that the Superior Court's decision was an unreasonable application of Strickland. Therefore, as to this claim, the petition will be denied.

Claim Two: Failure to Pursue Mental Health Records

In his second claim, Petitioner argues that trial counsel was ineffective for failing to pursue the victim's mental health records. Petitioner's theory is that the victim engaged in consensual sexual intercourse with him on January 17, 2008, then concocted a story about being raped by him on January 18, 2008 in order to retaliate against him for a miscarriage she suffered on December 5, 2007. He contends that the victim blamed him for the miscarriage and attempted to buy a firearm on the date she learned of the miscarriage in order to exact revenge. He argues that her mental health records would have shown that she was mentally unstable and this evidence would have undermined her credibility.

The Superior Court held that:

> We conclude that Appellant failed to plead and prove that failure to seek Victim's mental health records caused actual prejudice. The evidence – physical, documentary, and testimonial – was overwhelming that Appellant was the individual that attacked Victim. The DNA test proved that Appellant had sexual intercourse with Victim during the 24-hour period prior to the test. The documentary evidence showed that Appellant contacted Victim mere minutes after the attack. During her testimony, Victim was able to identify Appellant as the attacker in multiple ways. First, she recognized his voice during the attack. Second, only someone familiar with the house would have escaped through the basement door. Third, she recognized a tattoo on Appellant's thumb. Fourth, the attacker relayed information only known by Appellant. Finally, Victim recognized Appellant's voice when he called to ensure she had not reassembled her cell phone. Evidence of Victim's alleged mental disorders would not have overcome the probative force of the inculpatory evidence. Because Appellant cannot demonstrate actual prejudice, Appellant's second claim of ineffectiveness fails.

---

[1] "TTI" refers to Trial Testimony taken on January 19, 2011. "TTII" refers to Trial Testimony taken on February 14, 2011.

16

(Answer Ex. 35 at 8-9.)

Petitioner has not demonstrated that the Superior Court's decision was an unreasonable application of <u>Strickland</u>. In addition, Respondents note that, under Pennsylvania law, mental health records are absolutely privileged from disclosure without the patient's consent except in a specified list of circumstances having to do with psychiatric care, 50 P.S. § 7111, and that state courts have rejected attempts by defendants to have rape victims' mental health records disclosed in the manner Petitioner is attempting to do here, <u>see</u> <u>Commonwealth v. Kyle</u>, 533 A.2d 120 (Pa. Super. 1987). Finally, Respondents note that Petitioner questioned the victim at trial about his revenge theory and that whether she attempted to purchase a gun in December was irrelevant to whether he raped her a month later, especially because the case never involved the use of a gun. Therefore, as to this claim, the petition will be denied.

<u>Claim Three: Concession re Phone Call and Piece of Tape</u>

In his third claim, Petitioner contends that trial counsel was ineffective for conceding that he made an incriminating phone call to the victim after the crime and for stating that the piece of duct tape introduced at trial was used to restrain her wrists, when it was used to cover her eyes.

The Superior Court held that trial counsel did not concede that Petitioner made an incriminating phone call:

> Instead, he merely examined the witness regarding her testimony. Furthermore, even if counsel had made such a concession, it did not actually prejudice Appellant. As noted above, Victim testified that she recognized Appellant's voice. Thus, even if the telephone call came from a different phone, it could still have been placed by Appellant.

(Answer Ex. 35 at 10.)

With respect to the second part of this claim, the Superior Court held as follows:

> Appellant also argues that the duct tape introduced at trial was used to

17

> blind Victim, not restrain her wrists. We agree with the PCRA court that
> Appellant failed to prove that trial counsel's admission led to actual prejudice.
> Whether the tape was used to restrain Victim's wrists or blind her did not impact
> the trial court's finding that Appellant restrained Victim.

(Id.) Respondents note that the victim testified that the cut tape was over her eyes, not her wrists (TTI 37), and that it was this testimony (and not counsel's apparent misstatement) that the trial court relied upon when making its determination of guilt.

Petitioner has not demonstrated that the Superior Court's decision was an unreasonable application of Strickland. Therefore, as to this claim, the petition will be denied.

### Certificate of Appealability

Additionally, a certificate of appealability should be denied. The decision whether to grant or deny a certificate of appealability is "[t]he primary means of separating meritorious from frivolous appeals." Barefoot v. Estelle, 463 U.S. 880, 893 (1983). If a certificate of appealability is granted, the Court of Appeals must consider the merits of the appeal. However, when the district court denies a certificate of appealability, the Court of Appeals can still grant one if it deems it appropriate. 28 U.S.C. § 2253.

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons addressed above, this petition does not present a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability will be denied.

For these reasons, the petition for writ of habeas corpus (ECF No. 20) will be denied and a certificate of appealability will be denied. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DALE METZGER, ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 16-764 |
| ) | |
| ) | |
| LAWRENCE MAHALLY, Superintendent ) | |
| SCI DALLAS, et al., ) | Magistrate Judge Mitchell |
| Respondents. ) | |

## ORDER

AND NOW, this 2nd day of March 2017,

IT IS HEREBY ORDERED that the petition for writ of habeas corpus submitted by Petitioner Dale Metzger (ECF No. 3) is denied and a certificate of appealability is denied.

                                          s/Robert C. Mitchell
                                          ROBERT C. MITCHELL
                                          United States Magistrate Judge